Our next case this morning is Aaron McHale v. Denis McDonough. Good morning. May it please the Court. Before you start, we've got a lot of movement going around here, so let's just give it a second to clear out. I'm sure they're not fleeing the courtroom because of you, Mr. Randolph. I must be. You may proceed. All right. Good morning. May it please the Court. I represent Erin McHale, who is a Department of Veterans Affairs employee. Erin McHale has a variety of disabling conditions, physical impairments, of which her employer is aware. In 2014, Erin McHale's impairments began to take their toll on her. Erin McHale was rated an outstanding employee. She bent over backwards to help her fellow co-workers and the veterans at the VA. But after her impairments began to take its toll, take their toll on her, she needed some help. She started taking sick leave, and rather than reciprocate, her employer began to punish her. The first thing that her employer did was downgrade her performance from outstanding to fully successful. They said, you are no longer a team player. Erin says, I'm sick. What am I supposed to do? I've got these illnesses. I've got diabetes. I've got thyroid issues. I've got autoimmune disorder. What am I supposed to do other than take sick leave? No response from her employer. Shortly after that, this is in 2014, her employer gives her a sick leave restriction, basically saying, give us a doctor's note every time you're out more than three days, which was actually very rare, as if Erin was not telling the truth. That was the sick leave restriction. Erin thought that was unfair because she knew her supervisor knew she had disabilities, so she went to the union and complained. The union filed a grievance, and her supervisor said, I'm not taking away the sick leave restriction. Shortly thereafter, Erin was passed up for a promotion. She received the highest score from the promotion panel. The promotion panel wanted to pick her, but her supervisor said, no, I'm not picking her, because she has sick leave restrictions. Her supervisor denied that later under oath, but that's a disputed fact. Erin, knowing that she received the highest score, filed an EEO complaint. Now, when you work for a federal agency like the VA, the EEO process is entirely internal, so it's not like you go to the EEOC and you've got some neutral fact finder who manages the case through the process. You go to an informal counselor who's supposed to help the employees form their complaints and perhaps have a mediation, and Erin did have a mediation on one of her claims. If that doesn't work out, then the employee files a formal complaint, but by that point the employee should understand what their claims are. The informal counselor didn't help Erin with her claim. In fact, they didn't want to let her file a claim at all. They said, well, this seems to be based on union grievance, but what they didn't document was that the union grievance was based on the sick leave restriction that was related to Erin's complaints about her having disabilities and needing sick leave because she didn't know what else to do, but that never made it into the file. So Erin files her formal complaint. It's got sort of the kitchen sink's worth of complaints in it, and the EEO office selects which ones they want to include. So the case then moves on to the investigation stage. Here's where Erin tells the investigator everything. There's nothing held back. She talks about how it's harmed her. She talks about these multiple conversations with her supervisors about her disabilities, how they've impacted her, how she didn't know what else to do but take sick leave. That investigator submits a report of investigation that doesn't really address all of these other claims. It focuses on the things that the Office of Resolution Management, the EEO office, decided were her claims. Then it gets sent for a final agency decision where the Office of Employment Discrimination Adjudication says we didn't do anything wrong. But they never actually address what the complaints were or the facts that Erin told to the EEO investigator. So then Erin files her lawsuit, and the government moves for summary judgment, arguing in one part that Erin failed to exhaust much of her claims because they were not in the actual charging document. The problem is they were actually in the investigation, but the defendant simply ignored them. So they naturally grew out of the charges in her complaint, or the allegations in her complaint, naturally grew out of that core issue, which was I'm being punished for being disabled. Well, her actual complaint doesn't say that. It says she was given a sick leave restriction. Right. She's challenging an unwarranted sick leave restriction that was imposed for excessive use of sick leave. She doesn't mention disability discrimination, either in the union grievance or in the EEO complaint. She mentions it during the investigation. She did not write the grievance, but there was a meeting, and that's the underlying issue, which she discussed with her supervisors. And she did not write the EEO complaint. She wrote the charge with a bunch of handwritten notes. Right. She wrote the charge that has a bunch of handwritten notes. But this was based on her guidance from the informal counselor. But it's during the investigation stage where she tells them everything. She tells the investigator everything. That's what she's talking about. I have this thyroid condition. I have this diabetes. I have an autoimmune disorder. I told my supervisor these things. It's all key to the complaint that she shouldn't have had the sick leave restriction. It wasn't litigated in the administrative process as a disability discrimination claim. It was litigated as a complaint about the sick leave restriction and then potential retaliation. Well, that's how the agency framed it. That's not how Erin framed it. Well, based on what she said in her complaint. That was based on how she was guided by the informal counselor. But there's a difference between if you have diabetes or you have a thyroid condition. That is not necessarily a disability. I'm not even sure, even if you get past the exhaustion stuff here, I'm not even sure that there's enough prima facie evidence to establish that she had a disability under the law in the record. Sure. I can address that. But what I'm saying is it's harder on exhaustion, I think, because even if she was complaining of diabetes and thyroid conditions, she's not necessarily complaining of a disability. And so the question would be, does the administrative agency, would they have learned or should they have learned of her disability through investigating the sick leave claim? When she's only complaining about, I'm sick because I have diabetes, that doesn't necessarily equal I have a disability. Right. So had they investigated fully, they would have seen that Erin told her supervisors, I'm sick, I have diabetes, the medication I have to take makes me vomit. I need to, so I come to work late. I have to leave work early. I can't stand up very long. I need a chair. I need a private place to measure my glucose. I have high risk birth now because, so I need other accommodations. But that was never investigated. What ODECA should do when they see these facts that are largely outside of the charge that was presented to them, is send it back for a supplemental investigation, which they do. But in this case they did not. They simply said, no reprisal. Reprisal for what? Nobody ever actually says. It can't be the union grievance because that wouldn't be covered under the EEO. The only thing covered under the EEO was her original underlying, you're punishing me for being disabled, for taking sick leave. I told you I'm disabled. I told you it's impacting my ability to do work. What else am I supposed to do? But also the EEO charge went well beyond the sick leave restriction. It was amended twice to include supplemental or subsequent non-selections, as well as retaliation that were not related to non-selections. And those issues were neither addressed by the district court nor defendant there. So there was non-promotion retaliation alleged in the charge. And if you look at the investigation, Aaron actually says they're retaliating against me, and it's so bad that my coworkers won't even support me. They won't even talk to me. They won't talk to me about the scores they got for these interviews because they're also afraid of getting retaliated against by these supervisors. I need to save the rest for rebuttal. That's fine. Thank you. Mr. Lane. Morning, Your Honors, police court, counsel. I feel like I'm listening to two different cases, actually three different cases. There is the case that Ms. McHale filed before the EEO. There is the case that we litigated before the district court. And there's a case that counsel is now arguing in front of this court. But one thing that is clear is on the administrative record is that plaintiff never raised Rehabilitation Act accommodation or discrimination claims during the entire administrative, two-year administrative process prior to filing suit, and that for that reason the district court's decision on failure to exhaust on Rehabilitation Act should be affirmed. Now, in fact, and the court has already noticed this, but I will say a copy of Ms. McHale's administrative complaint in her handwriting, which she affirmed was her complaint during her deposition, is attached to our appendix. It's page 1 through 10. If you want to go and read through it, and she has in quite some detail dates of these alleged incidents and what they were, there is not a single mention of disability or sickness or medical condition. She is complaining about being given these sick leave restrictions. There's nothing to be put the court, excuse me, put the PA on notice that she had any kind of physical condition. In fact, the reason she was placed on the sick leave restriction by the VA was so they could find out why she's taking so much sick leave. What we find out when we go through this 1,480-page administrative report of investigation is that diabetes, side effects from medication, is mentioned nowhere in this report. All we have are three pages, three entries, and this is at Record 69-2, which is Defendant's Exhibit, at page 12 and 26 and page 26 and 27. There are three absences. These come in June of 2015. You remember the sick leave restriction that she's complaining about was placed in December of 2014. Guess what the doctor's notes say that she brings in. There's no mention of diabetes. There's no mention of any type of drug interaction. He just asked her to be excused because she strained her knee. I would submit even stretching this concept to the very furthest, there is no way that you can relate being absent for a couple of days for a knee strain to having chronic, you know, putting the agency on notice that she has a chronic condition that interferes with her ability to engage in life activities like work. The bottom line is if Ms. McHale had been asking for an accommodation, it would have been helpful for her to tell the VA what exactly she wanted. In fact, the VA had to try to coax this out of her in terms of what her physical condition really was. The information she gave them was, I strained my knee, I had to take three days off. Now, I want to address a couple of things that were brought up by Plaintiff's Counsel. The argument, the issue that there was a waiver of retaliation arguments, things of that nature, those were addressed in the opening memo, Record 68 at 13-14, and the reply memo, Record 77 at 14, page 14-15, that summary judgment against McHale's administratively exhausted claims, in other words, that she denied promotion into positions, had restrictions placed on her leave, her supervisor treated her rudely. These were proper because there's no evidence, she failed to present any evidence that these were motivated by retaliatory enemas. The evidence that is in the file is that her supervisor said that she was following procedure that was under the guidance of human resource management and that, in fact, there is an affidavit or declaration on a file from that human resource manager. Unless there are any further questions? I do. Sure. You cite Kroll as saying union grievances don't qualify as EEO activity, but didn't we hold just the opposite in Lange? I'm sorry? In Lange. Kroll ruled against the plaintiff because she admitted the grievance didn't address age or sex discrimination at all, so it was a different issue. My understanding is that union grievance, you certainly can raise discrimination claims within you, union grievance. Let me backtrack a little bit. My understanding is that the grievance procedures per se do not constitute, they're not the same as EEO, it's not the same as EEO activity, which is the reason that you can go ahead and file EEO claims, subsequent EEO claims. So that's my understanding, Your Honor. Okay. Unless there's anything else we pass the district court to be? All right, thank you. Thank you. Mr. Randolph. Thank you. I did want to just address one thing. Counsel cited the record 69-2 and said there's nothing in there about Ms. McHale saying anything about diabetes or any other condition. That's simply inaccurate. On 69-2, page 617 through 627, 639, 640, and 652, she identifies her disabilities and indicates that she told her supervisors about these disabilities surrounding the sick leave restriction prior to her filing her EEO. So that's simply incorrect. And this is what the agency and the defendant has done this entire time, is overlooked what Ms. McHale has said and then said, too bad. They guided her through the process. They told her what to put on her complaint. When she told her entire story to the investigator, they ignored her story. And they continue to ignore her story today. We're asking that this be sent back for trial on all her claims. Thank you. All right, thank you very much. Our thanks to both counsel. The case is taken under advisement.